UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Michele L. Kasperek,

                              Plaintiff,

          v.

New York State, Department of Corrections
   and Community Supervision,

                              Defendant.

**Report and Recommendation**

16-CV-671V

## I.    INTRODUCTION

After more than 22 years as a teacher with defendant New York State Department of

Corrections and Community Supervision ("DOCCS"), plaintiff Michele Kasperek ("Kasperek")

endured a stretch of several years of alleged sexual harassment and retaliation.  Kasperek repeatedly

found sexually offensive graffiti on her classroom door; on one instance, she was told to clean up

the graffiti herself.  Male inmates were allowed to become aware of the graffiti, purportedly

undermining Kasperek's authority.  Kasperek received threatening telephone calls that were made

on-site at her workplace.  Kasperek complained repeatedly, but staffers responsible for the conduct

were not identified.  Instead, Kasperek was called out in all but name during a training session as

someone who made complaints.  Kasperek and her coworker boyfriend received increased scrutiny

and denials of schedule changes or previously performed supervisor opportunities.  Kasperek also

found herself moved from her classroom of over 20 years and, on the first day in the new

classroom, asked to wear less perfume.

Kasperek now has brought suit against DOCCS charging a hostile work environment, sex

discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §§ 2000e to 2000e-17.  On November 21, 2016, DOCCS filed a motion to

dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure

("FRCP").  (Dkt. No. 16.)  DOCCS believes that the events that Kasperek has alleged, though

offensive, were too sporadic to support a claim of a hostile work environment.  DOCCS also

argues that Kasperek has not pled a materially adverse change in her employment that could create

a plausible claim for either sex discrimination or retaliation.  The retaliation claim, according to

DOCCS, fails for the additional reason that Kasperek did not make the claim within 90 days of

final administrative determination, thus making the claim untimely.  Kasperek opposes the motion

by reiterating that she has alleged events some of which DOCCS itself has substantiated and some

of which formed the basis of a reasonable-cause determination at the administrative level.

Kasperek also argues that her retaliation claim is timely as counted from the very last action taken

at the administrative level.

The Hon. Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C.

§ 636(b).  (Dkt. No. 12.)  The Court has deemed the pending motion submitted on papers under

FRCP 78(b).  For the reasons below, the Court respectfully recommends granting the motion in

part to dismiss the second claim of the amended complaint for sex discrimination.  The Court

recommends denying the motion with respect to the first claim for a hostile work environment

and the third claim for retaliation.

## II.   BACKGROUND[1]

### A.   *Events at Work*

As Kasperek has pled her allegations, the events pertaining to this case arose only in the most recent years of her employment with DOCCS.  Kasperek has worked for DOCCS since 1990 as a teacher.  The amended complaint suggests that Kasperek's entire work history has taken place at the Gowanda Correctional Facility in Gowanda, New York.  Kasperek gives high school equivalency instruction to inmates, including preparation for a high school equivalency examination called Test Assessing Secondary Completion, or TASC.  Kasperek has described "her classroom of over twenty years" (Dkt. No. 14 at 11); considering that this classroom seems to have a sign on the door with her name (*id.* at 3), the Court infers that her instruction over the years consistently has occurred in the same room regardless of whether the room is used for other purposes when Kasperek is not teaching.  From the start of her employment to late 2012, Kasperek's employment appears to have been uneventful, with only positive performance evaluations.

The events pertaining to this case began on October 31, 2012.  That day, Kasperek found drawings of penises on her classroom door surrounding her name.  Kasperek's door was the only one of about 20 in the area that had graffiti on it.  Kasperek has pled that access to the area near her classroom is locked and restricted in such a way that inmates could not go there themselves, implying that a DOCCS employee drew the graffiti or allowed it to happen.  Kasperek complained to her supervisors, and the supervisors made arrangements to remove the graffiti.  The

---

[1] For the sake of brevity, and consistent with the FRCP 12(b)(6) standard, the Court will refrain from repeated use of the words "alleged" or "allegedly" when describing the events that Kasperek put in the amended complaint.  Nothing in this Background section constitutes a finding of fact unless otherwise noted.

arrangements, however, involved male inmate crews and not DOCCS maintenance staff, which allowed male inmates to become aware of what happened.  "This behavior undermined Ms. Kasperek's authority and discredited her credibility with inmates and staff alike.  The harassment was treated as a joke and not as a serious offence, thus making it okay to come into contact with the offensive penis drawings." (*Id.* at 5.)  Drawings of penises appeared again on or near Kasperek's door on November 1, 2012; February 18, 2013; March 18, 2014; June 2, 2014; an unspecified date in December 2014; and March 11, 2015.  DOCCS created an "Action Plan" to address Kasperek's harassment, and that plan included the use of maintenance staff members, but male inmates continued to be involved in cleanup.   Kasperek complained to supervisors each time but appears not to have received any significant remedy beyond removal of the drawings.  One time, an unspecified representative of DOCCS told Kasperek to clean up the drawings herself.  (*Id.* at 7.)  The last time the drawings appeared, the remedy was to move Kasperek "from her classroom of over twenty years to Building 61.  Defendant stated that Ms. Kasperek was moved to Building 61 for her 'personal safety and protection' by Deputy Superintendent of Programs Wendy Cully. Defendant refused to put this reasoning in writing.  Of note, Building 61 is the furthest building away from Ms. Kasperek's original classroom." (*Id.* at 11.)  At one point, Kasperek asked to have surveillance cameras installed near her classroom to determine who kept creating the drawings. Her request was denied, and the amended complaint contains no information about whether anyone ever was identified as responsible.  On her first day in her new classroom, March 19, 2015, a DOCCS officer entered the classroom and asked Kasperek to wear less perfume.  (*Id.* at 12.)

Other notable events included two harassing telephone calls made to Kasperek at work on January 7, 2015.  The calls came in at 7:35 AM and 9:50 AM.  During the first call, Kasperek answered the telephone and introduced herself.  A male voice said the word "cunt" and then hung up.  During the second call, a male voice stated, "Watch your back, bitch," and then hung up. Upon information and belief, the calls were made to Kasperek from another room on site.  An interview between DOCCS and Kasperek on April 16, 2015 revealed that DOCCS knows where the calls were made and who had access to the secure telephone from which the calls were made. (*Id.* at 10.)

During the timeline for this case, Kasperek perceived acts of retaliation as well.  On May 6, 2014, Kasperek asked for help opening a window in her classroom and was refused.  Kasperek's boyfriend and coworker was denied a certain schedule change and was denied a certain job transfer four months despite being the most senior applicant.  DOCCS investigated Kasperek's relationship after she complained of sexual harassment and began tracking Kasperek's attendance, something that had not occurred before.  Kasperek stopped receiving opportunities to perform Acting Supervisor duties for her department.  On December 17, 2014, DOCCS conducted a training session on workplace violence; during the training, DOCCS staffers apparently did not mention Kasperek by name but discussed her complaints of sexual harassment in enough detail to make obvious to all attendees that she had been making complaints.  Kasperek has pled that DOCCS retaliated both for her internal complaints to that agency and for her EEOC complaint.

Kasperek has asserted that the events of this case have had a severe effect on her health. Kasperek fears for her safety at work because of the harassment and threats that she has

experienced.  Kasperek has suffered depression and anxiety as well as physical symptoms such as

migraine headaches, sleep deprivation, high blood pressure, and neck and back tension.

### B.  EEOC Charge

During the events that Kasperek has described in the amended complaint, she decided that

those events needed more formal, outside review.  On June 30, 2014, Kasperek filed Charge No.

846-2014-28643 with the Equal Employment Opportunity Commission ("EEOC").  The Court

has not seen Kasperek's EEOC charge but infers from the available record that it contained

allegations substantially similar to the allegations in the amended complaint.  The EEOC's

investigation ultimately generated two documents that the parties have referenced and that the

Court will discuss in more detail below.  On or around October 23, 2015, the EEOC sent

Kasperek a letter with its final determination of her charge.  (Dkt. No. 16-3.)[2]  The EEOC split its

conclusions about Kasperek's allegations.  With respect to allegations about discrimination in

violation of Title VII, the EEOC "determined that there is reasonable cause to believe that

[DOCCS] has discriminated against [Kasperek] on the basis of sex in violation of Title VII." (*Id.* at

3.)  The EEOC reached a different conclusion about the allegations of retaliation, finding

"insufficient evidence to suggest that [Kasperek] was retaliated against in violation of

Title VII."  The EEOC then gave Kasperek a notice about the dismissed allegations of retaliation:

---

[2] The record does not make clear when Kasperek received this letter, though she does not contest receiving it.  "There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice.  There is a further presumption that a mailed document is received three days after its mailing."  *Friedman v. Swiss Re Am. Holding Corp.*, 512 F. App'x 94, 96 (2d Cir. 2013) (summary order) (citations omitted).  Taking judicial notice that October 23, 2015 was a Friday, and accounting for a likely lack of mail service on Sunday, October 25, 2015, the Court presumes that Kasperek received the letter on October 27, 2015.  The Court makes this presumption without prejudice to any facts to the contrary that might emerge during discovery.

It announced that "[Kasperek] may only pursue the issues/bases dismissed at this time by filing suit against [DOCCS] within 90 days of receipt of this Determination." (*Id.*)

The second important document that the parties have referenced came about after the EEOC's final determination. The EEOC attempted conciliation with DOCCS but was unsuccessful. Per 42 U.S.C. § 2000e-5(f)(1), because conciliation was unsuccessful and DOCCS is a governmental agency, the EEOC forwarded Kasperek's surviving allegations of discrimination to the Civil Rights Division of the Department of Justice ("DOJ"). DOJ's investigation culminated in a letter to Kasperek dated May 20, 2016. (Dkt. No. 17-2.)[3] The letter bore the heading, "NOTICE OF RIGHT TO SUE WITHIN 90 DAYS." (*Id.* at 2.) In the letter, DOJ informed Kasperek that it "will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC)." (*Id.*) DOJ gave no reason for its decision not to file suit. DOJ then advised Kasperek of her right to commence a civil action within 90 days of receiving the letter. (*Id.*)

### C. This Litigation

Kasperek commenced this case by filing her original complaint on August 18, 2016 and her amended complaint on November 3, 2016. The amended complaint contains three claims. In the first claim, Kasperek accuses DOCCS of a hostile work environment in violation of Title VII. In the second claim, Kasperek accuses DOCCS of discrimination in violation of Title VII. In the third claim, Kasperek accuses DOCCS of retaliation for opposing discrimination in violation of Title VII. All three claims rest on the factual assertions that the Court summarized above.

---

[3] When Kasperek received this letter also is unknown, though again she does not contest receiving it. For the reasons expressed in the previous footnote, the Court takes judicial notice that May 20, 2016 was a Friday and presumes, without prejudice, that Kasperek received this letter on May 24, 2016.

DOCCS filed the pending motion to dismiss on November 21, 2016.[4]  DOCCS advances

several arguments in favor of dismissal.  With respect to the claim of a hostile work environment,

DOCCS argues that the seven incidents of graffiti, when spread out over three years, could not

have transformed Kasperek's workplace no matter how unpleasant they might have been.  DOCCS

argues separately that Kasperek's allegations about telephone calls "are also insufficiently

continuous or concerted to create a hostile work environment.  Indeed, Plaintiff admits that she

never received such phone calls other than on a single day."  (Dkt. No. 16-1 at 10.)  Additionally,

Kasperek has failed, according to DOCCS, to plead a plausible link connecting any offensive

conduct to her supervisors.  With respect to the claim of discrimination, DOCCS argues that

Kasperek has not adequately pled any adverse employment action that she suffered.  With respect

to the claim of retaliation, DOCCS argues similarly that Kasperek has not adequately pled any

adverse employment action that it carried out against her, let alone any action carried out in

response to complaints.  DOCCS makes the additional argument that Kasperek's retaliation claim

is time-barred.  DOCCS points to the October 23, 2015 letter from the EEOC that dismissed the

retaliation claim and started the 90-day clock for a civil action based on that claim.  According to

DOCCS, the DOJ letter of May 20, 2016 set a separate 90-day clock for the discrimination charge

that had survived up to that point.  Since Kasperek filed suit within 90 days of the DOJ letter but

more than 90 days after the EEOC letter, the retaliation claim fails as untimely.

---

[4] DOCCS had filed an earlier version of its motion to address the original complaint.  (Dkt. No. 10.)  The
Court considers the current version of the motion to have superseded the earlier version, but it has not
terminated the earlier version in an abundance of caution about the limits of its referral from Judge
Vilardo.  As a housekeeping matter, the Court recommends denying the earlier version as moot or
otherwise terminating it.

Kasperek opposes the pending motion in all respects.  Kasperek defends the adequacy of her allegations by repeating them and by pointing out that "there has been no discovery and no fact-finding with which to evaluate the totality of the circumstances of the work environment, as is required as a matter of law.  Since there has been no discovery at this stage of the proceedings, it is premature for this Court to make findings of fact, as Defendant would have this Court do."  (Dkt. No. 17 at 6.)  Kasperek also notes that DOCCS substantiated "one or more" of the factual allegations that she had made in her internal administrative complaints.  (*Id.* at 11.)  With respect to the timeliness of the retaliation claim, Kasperek emphasizes that only the DOJ letter had been labeled formally as a "right to sue" letter.  (*See id.* at 11–12.)  If necessary, and following *Lyons v. New York*, No. 15 CIV. 3669 (NSR), 2016 WL 5339555 (S.D.N.Y. Sept. 22, 2016), Kasperek asks the Court to recognize the retaliation charge as reasonably related to the discrimination charge.

## III.   DISCUSSION

### A.  *Motions to Dismiss Generally*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the plaintiff's favor."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,

602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted).  "On a motion to

dismiss, the court may consider any written instrument attached to the complaint as an exhibit or

any statements or documents incorporated in it by reference."  *Yak v. Bank Brussels Lambert*, 252

F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted).

"Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if

established, create legally cognizable theories of recovery."  *Cole-Hoover v. Shinseki*, No. 10-CV-669,

2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation

omitted).  The ordinary rules for assessing the sufficiency of a complaint apply to Title VII cases.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (citations omitted).

       As a preliminary matter, the Court must decide whether to consider the EEOC and DOJ

letters, documents that have become part of the record but lie outside of the amended complaint.

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no

account of its basis in evidence, a court adjudicating such a motion may review only a narrow

universe of materials.  Generally, we do not look beyond facts stated on the face of the complaint,

documents appended to the complaint or incorporated in the complaint by reference, and matters

of which judicial notice may be taken."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)

(internal quotation and editorial marks and citation omitted).  "Where a document is not

incorporated by reference, the court may neverless consider it where the complaint relies heavily

upon its terms and effect, thereby rendering the document integral to the complaint.  However,

even if a document is integral to the complaint, it must be clear on the record that no dispute

exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist

no material disputed issues of fact regarding the relevance of the document."  *DiFolco v. MSNBC*

*Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted).

"A document is integral to the complaint where the complaint relies heavily upon its terms and

effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed, even

offering limited quotations from the document is not enough.  In most instances where this

exception is recognized, the incorporated material is a contract or other legal document containing

obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually

because the document, read in its entirety, would undermine the legitimacy of the plaintiff's

claim—was not attached to the complaint."  *Goel*, 820 F.3d at 559 (internal quotation and editorial

marks and citations omitted).

Applying this standard, a few factors weigh in favor of including the EEOC and DOJ

letters in the Court's consideration of the pending motion.  Kasperek mentioned both letters

explicitly in paragraphs 6–8 of the amended complaint to confirm that she exhausted

administrative remedies and that the Court could consider her case.  The letters are central to

whether Kasperek's retaliation claim can be considered timely.  Kasperek has pled that some of

DOCCS's alleged retaliation against her happened in response to her complaint to the EEOC.

Finally, both sides have cited the copies of the letters that appear in the docket, suggesting that

those copies are factually accurate apart from any disagreements over their legal significance.  The

Court thus will consider both letters as it assesses the pending motion.  *Cf., e.g., Wilson v.*

*Southampton Hosp.*, No. 14-CV-5884 ADS GRB, 2015 WL 5124481, at *7 (E.D.N.Y. Aug. 28,

2015) (accepting EEOC letter with papers for motion to dismiss); *Schubbe v. Derrick Corp.*, No. 14-CV-531S, 2015 WL 1003909, at *4 (W.D.N.Y. Mar. 5, 2015) (same), *report and recommendation adopted*, No. 14-CV-531S, Dkt. No. 36 (Apr. 22, 2015) (electronic text order).

### B. Hostile Work Environment Claim

With the above general principles in mind, the Court will start with the first claim in Kasperek's amended complaint, alleging a hostile work environment. To state a cognizable claim, Kasperek needs to set forth plausible overall circumstances that, if later proven, would establish a discriminatorily abusive work environment that detracted from her job performance, discouraged her from remaining on the job, kept her from advancing in her career, or otherwise "offends Title VII's broad rule of workplace equality." *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993). Isolated incidents of offensive conduct would not suffice, but Kasperek would do enough to plead either an extraordinarily severe single incident or lesser incidents that "occur either in concert or with a regularity that can reasonably be termed pervasive." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (internal quotation marks and citations omitted).

The amended complaint contains several categories of conduct that, if proven true, could have worked in tandem to create a pervasive environment that detracted from Kasperek's performance. Kasperek has pled that her classroom had been targeted multiple times for the same sexually offensive graffiti; the amended complaint contains an implication that no one else—including no men—had been targeted in this way. Kasperek has pled that DOCCS allowed inmates to become aware that Kasperek alone kept getting targeted for the graffiti; humiliation of prison authority figures in the presence of inmates can be actionable under the right

12

circumstances. *Cf. Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (searching a corrections

officer in front of inmates for carrying a pager in violation of prison policy).  Kasperek's work

environment also included threatening telephone calls—likely from coworkers—and sexual slurs.

*Cf. Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 92 (N.D.N.Y. 2013)

(denying dismissal of a hostile work environment claim that rested in part on sexual slurs); *Seale v.

Madison County*, 929 F. Supp. 2d 51, 73 (N.D.N.Y. 2013) (dismissal of hostile work environment

claim denied where a song with "sexually humiliating and degrading" lyrics was directed at the

plaintiff and created an objectively severe hostile work environment).  DOCCS at some point

devised an "Action Plan" to address Kasperek's complaints, indicating that Kasperek's employer

had full awareness of her allegations.  A reasonable inference from the amended complaint,

however, is that any remedial plans did not change the work environment and perhaps were not

intended to bring about actual changes. *Cf. Wills v. Key Food Stores Co-operative, Inc.*, No. 95 CV

5333 (SJ), 1997 WL 168590, at *5 (E.D.N.Y. Apr. 9, 1997) (denying a motion to dismiss in part

where "[a]ccepting [his] allegations as true, Key Food knew their employees were harassing plaintiff,

but did nothing about it.").  All of these alleged events occurred over a much longer timeline than

the one-month timeline in *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54 (2d Cir. 2004) or the

seven-month timeline in *McKenna v. VCS Grp. LLC*, No. CIV.A308CV1563VLB, 2009 WL

3193879 (D. Conn. Sept. 30, 2009).  Together, the alleged events could have created an

environment over several years that would remind Kasperek regularly that, for improper reasons,

she would be better off leaving. *Cf. Tekle v. Wegmans Food Markets, Inc.*, No. 15-CV-6386, 2015 WL

8485273, at *3 (W.D.N.Y. Dec. 9, 2015) (denying dismissal of a hostile work environment claim

based on four alleged incidents, "considering the totality of the circumstances alleged, including the frequency and severity of the alleged discriminatory conduct and whether it altered the conditions of plaintiff's employment").  DOCCS objects that the alleged events do not target Kasperek based on sex.  Kasperek enjoys the benefit of the doubt for FRCP 12 purposes, though, and inferences can be made from the perfume request, the male voices on the telephone, and the absence of any male staffers being targeted.

Kasperek has a lot to do during discovery to substantiate her allegations.  Summary judgment might yet happen as it did in *Rosas v. Balter Sales Co.*, 2015 U.S. Dist. LEXIS 176625 (S.D.N.Y. Mar. 30, 2015), or in *Geller v. N. Shore Long Island Jewish Health Sys.*, No. 10-CV-0170 JS WDW, 2013 WL 5348313 (E.D.N.Y. Sept. 23, 2013).  For now, Kasperek's scenario of improper marginalization plausibly could have happened, and that is enough.  *Cf. Goins v. Bridgeport Hosp.*, No. 3:11CV560 MRK, 2011 WL 8831462, at *3 (D. Conn. Oct. 14, 2011) (denying a motion to dismiss in part where the plaintiff "has alleged an environment so palpably hostile that a new employee could already describe her as having 'a target on her back'").[5]

### C. Discrimination Claim

Next, the Court will evaluate Kasperek's claim for sex discrimination, the second claim in the amended complaint.  "To prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or

---

[5] Incidentally, the *Goins* case is a good example of why the Court is cautioning Kasperek about the need to substantiate her allegations during discovery.  The court in *Goins* allowed at least some of the plaintiff's allegations to survive into discovery but later granted summary judgment.  The Second Circuit affirmed. 555 Fed. App'x 70 (2d Cir. 2014) (summary order).

action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.  Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII . . . . At the pleading stage, a plaintiff need not establish a prima facie case satisfying the required elements of disparate treatment, but only sufficient facts to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) (internal quotation and editorial marks and citations omitted).  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation and editorial marks and citations omitted).

Here, Kasperek has not pled any information that rises to the level of a materially adverse change.  The graffiti, threatening telephone calls, sexual slurs, and other events are cognizable under the first and third claims of the amended complaint for reasons explained elsewhere in this Report and Recommendation.  These events, however, do not appear to have led to any diminution in Kasperek's wages, benefits, hours, major responsibilities, or other material aspects of her job.  *Cf., e.g., Ruiz v. City of New York*, No. 14-CV-5231 VEC, 2015 WL 5146629, at *4

15

(S.D.N.Y. Sept. 2, 2015) (collecting cases demonstrating that disciplinary notices and unfair criticism do not constitute adverse employment actions, while denial of a transfer, transfers to more dangerous working conditions, and "reassignment that constitutes a career setback" can meet the standard); *Bowman v. Granny's Kitchen*, LLC, No. 6:14-CV-00585 MAD, 2015 WL 541276, at *4 (N.D.N.Y. Feb. 10, 2015) (failure to connect use of racial slurs to a termination).  Without more, the second claim simply cannot continue.  The Court accordingly recommends granting DOCCS's motion with respect to the second claim of the amended complaint.

### D.  Retaliation Claim

Finally, the Court turns to Kasperek's claim for retaliation.  The parties have argued two issues pertaining to the retaliation claim, and the Court will examine each in turn.

#### i.    Timeliness of the claim

The Court will examine the timeliness of Kasperek's retaliation claim first; a finding of untimeliness would render unnecessary a substantive review of the claim's sufficiency.  The basic rule governing Kasperek's timeliness is straightforward.  Upon receipt of a right-to-sue letter, Kasperek would have had 90 days to commence a civil action against DOCCS.  42 U.S.C. § 2000e-5(f)(1); *see also, e.g., Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) ("In order to be timely, a claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC.").  The 90-day rule applies most easily in cases that feature a single right-to-sue letter.  *Cf., e.g., Ortiz v. United Food & Commercial Workers Union (UFCW), AFL-CIO, Local 348-S*, No. 14-CV-00743 (MKB), 2016 WL 4257348, at *2 (E.D.N.Y. Aug. 11, 2016).  Some cases feature more than one right-to-sue letter, and those cases fall into one of the following two categories:

16

*Multiple charges, multiple letters.*  In this category, plaintiffs filed two or more charges with the EEOC, and those charges had different charge numbers.  The EEOC or equivalent state agency subsequently issued one right-to-sue letter per charge.  *Cf., e.g., Haygood v. ACM Med. Lab., Inc.*, 642 F. App'x 27, 28 (2d Cir. 2016) (summary order); *Lyons v. New York*, No. 15 CIV. 3669 (NSR), 2016 WL 5339555, at *6 (S.D.N.Y. Sept. 22, 2016); *Brown v. JPMorgan Chase Bank, N.A.*, No. 12-CV-544 RRM LB, 2013 WL 4009795, at *6 (E.D.N.Y. Aug. 5, 2013); *Daniel v. Long Island Hous. P'ship, Inc.*, No. 08-CV-01455 JFB/WDW, 2009 WL 702209, at *6 (E.D.N.Y. Mar. 13, 2009); *Jeter v. N.Y. City Dep't of Educ.*, 549 F. Supp. 2d 295, 307 (E.D.N.Y. 2008).  The rule that has emerged for this category of cases is that each right-to-sue letter starts a different 90-day clock for the charge addressed by that letter.  Courts that have developed or followed this rule have explained the underlying policy for it: Barring suit after the expiration of the first clock would allow employers to resume potentially offensive conduct with impunity going forward.  *See, e.g., Shamley v. ITT Corp.*, No. 85 CIV. 1703 (JFK), 1987 WL 17425, at *1 (S.D.N.Y. Sept. 18, 1987) (denying a motion to dismiss a Title VII claim where "the second right-to-sue letter was obtained, not to circumvent the time limitations on commencing suit under Title VII, but to assert claims based on alleged continuing violations by ITT after the commencement of the first suit.").

*Single charge, single but repeated letter.*  In this category, plaintiffs filed a single charge with the EEOC that reached a final determination.  The EEOC dutifully issued a right-to-sue letter, which started the 90-day clock for civil litigation.  The time for litigation either ran out or came close to running out, and the plaintiffs arranged to have the EEOC issue another letter—essentially a duplicate letter for the same charge.  *Cf. Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827,

828 (2d Cir. 1986) (per curiam) ("Having failed to initiate a timely action after the first Notice,

appellant secured a second Notice of Right to Sue on November 30, 1979 and brought the present

action in February, 1980.  The second Notice is concededly based upon a charge involving exactly

the same facts as the first Notice."); *Frederick v. Jetblue Airways Corp.*, No. 14CV7238DLIRER, 2016

WL 1306535, at *7 (E.D.N.Y. Mar. 31, 2016), *aff'd*, No. 16-1373-CV, 2016 WL 6885714 (2d Cir.

Nov. 22, 2016).  Courts addressing this category of cases have disregarded subsequent duplicate

letters and have adhered to the original 90-day clock when determining timeliness.  The

underlying policy has emphasized the need to maintain the significance of the 90-day clock.  *See*

*Lo*, 787 F.2d at 828 ("We hold that whether the present action is time barred must be determined

with reference to only the first Notice of Right to Sue.  Otherwise, the time limitations of 42

U.S.C. § 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade

those requirements simply by seeking additional Notices of Right to Sue whenever they pleased.")

(citations omitted).

DOCCS's status as a governmental agency placed Kasperek in a third, less common

category: multiple right-to-sue letters from different governmental authorities.  Here, Kasperek filed

a single charge with the EEOC.  The single charge, with its single charge number, contained two

allegations, one allegation for harassment and one allegation for retaliation.  The EEOC, on its

own initiative, reached a split decision on Kasperek's allegations, dismissing the retaliation

allegation fairly quickly and referring the harassment allegation for conciliation and for review by

DOJ.  Each half of the split ultimately generated its own right-to-sue letter, which left Kasperek in

the unusual position of having a single charge generate two letters with two different clocks.  There

is some case law that offers guidance for the similar scenario of a single charge referred in whole from the EEOC to DOJ.  In *Dougherty v. Barry*, 869 F.2d 605 (D.C. Cir. 1989), the EEOC considered a charge in whole, found no reasonable cause, and issued a right-to-sue letter.  The EEOC later reopened the file upon request for reconsideration by the complainants, found reasonable cause, and referred the whole charge to DOJ.  DOJ eventually issued a second right-to-sue letter, but the second letter did not change the expiration of the original 90-day clock.  *Accord Williams v. Strickland*, No. CIV. A. 3:92-515-19, 1993 WL 153915, at *4–5 (D.S.C. Mar. 12, 1993) (same scenario except that the EEOC found no reasonable cause on some allegations but then referred the whole case file to DOJ anyway).  *Dougherty* and *Williams*, though, treated their respective EEOC charges in whole without any splitting.

To resolve Kasperek's very unusual scenario, the Court returns to first principles.  With respect to statutory interpretation, the provision creating the 90-day clock starts that clock upon either of two events—a dismissal or a decision by DOJ not to sue—that affect "a charge filed with the Commission."  42 U.S.C. § 2000e-5(f)(1).  "A charge" is in the singular and can cover any number of allegations that someone files in a single set of paperwork.  *See* 29 C.F.R. § 1601.6(a) (mentioning "information concerning alleged violations" that lead to "the filing of a charge"); *id.* § 1601.12(a)(3) (implying that a single charge can contain information about multiple "alleged unlawful employment practices"); *id.* § 1601.18(a) (distinguishing the overall charge from its components by referring to "the charge and every portion thereof").  While the statute does not seem to contemplate that both clock-starting events could occur within the same charge, what controls here is that Kasperek's charge—EEOC Charge No. 846-2014-28643—is one charge.  In the

19

highly unusual instance where both dismissal and a decision not to sue occur within the same

charge, a plain reading of the statute and basic fairness would appear to require that the 90-day

clock for *the* charge not start until *the* charge has completely run its course.  Plaintiffs with a single

charge under any other circumstances are not required to litigate before that single charge has run

its course in the first instance, apart from any requests for reconsideration.  The Court's analysis

finds some support in one case analogous to Kasperek's situation.  In *Franceschi v. United States VA*,

514 F.3d 81 (1st Cir. 2008), the complainant was employed by a federal agency and not a state

agency like DOCCS, and the presence of a federal agency placed the case under slightly different

EEOC regulations.  Nevertheless, the EEOC split the allegations in the complainant's charge, and

the dismissal of some allegations did not require further action by the complainant until the entire

charge ran its course.

Applying one clock to a single charge or EEOC file also has practical advantages.  Plaintiffs

are free to include multiple allegations in a single EEOC file, and the EEOC has discretion to split

up those allegations as it did here with Kasperek.  If plaintiffs had to file suit for each portion of a

single file that the EEOC chose to break up then they potentially would face a scenario in which

they file one or more civil actions for dismissed or no-caused allegations; the EEOC or DOJ file

one or more civil actions for accepted allegations; multiple filing fees wind up paid to the courts;

and then those multiple lawsuits have to be consolidated—and all for a single EEOC file.  There is

no reason to subject plaintiffs to the possibility of such a scenario.  To the contrary, waiting for

one civil action to emerge from one formal EEOC charge or file advances the spirit of FRCP 1 and

its direction that civil procedure rules, including FRCP 12(b)(6), "should be construed,

administered, and employed by the court and the parties to secure the just, speedy, and

inexpensive determination of every action and proceeding."  Accordingly, the Court finds that

EEOC Charge No. 846-2014-28643 did not run its course until May 24, 2016.  Kasperek's

retaliation claim, having been filed with the original complaint on August 18, 2016, is thus timely.

> *ii.   Legal sufficiency of the claim*

Having settled the timeliness of Kasperek's retaliation claim, the Court now needs to assess

its legal sufficiency under FRCP 12(b)(6).  Paragraph 125 of the amended complaint gathers, in

concise fashion, the alleged conduct that composes Kasperek's claim for retaliation:

> Defendant violated the law by allowing male inmates to paint over the
> classroom door, multiple times, despite Ms. Kasperek's request for them not to; by
> denying Ms. Kasperek's coworker/boyfriend a schedule change; by investigating Ms.
> Kasperek's personal relationship with her co-worker/boyfriend; by tracking Ms.
> Kasperek's attendance, which had not been done before Ms. Kasperek complained
> of discrimination; by not asking Ms. Kasperek to be an acting supervisor, after she
> complained of discrimination; by allowing other teachers to have their orders
> delivered except for Ms. Kasperek; by creating an ineffective "Action Plan;" by
> "outing" Ms. Kasperek as the employee who complained of discrimination at a staff
> training meeting; by allowing Ms. Kasperek to receive two threatening and
> harassing phone calls where she was called a "cunt" and told to "watch your back,
> bitch"; by refusing an escort to Ms. Kasperek after she requested one from her
> classroom to the computer room out of concerns of personal safety; by moving Ms.
> Kasperek to a new classroom in Building 61; and by allowing the doors near her
> new classroom to be unlocked in Building 61, among other things.

(Dkt. No. 14 at 17.)

In reviewing the aggregate of events that allegedly occurred after Kasperek started

complaining about harassment, the Court finds two aspects of the events worth noting.  To the

extent that the Court examines each alleged event individually, no one event equates to the kinds

of individual events that courts have found actionable, such as "a refusal to hire or rehire, delay in

reinstatement, withdrawal of a reinstatement offer, disadvantageous transfer or assignment,

21

reduction of duties, being placed on a performance improvement plan, extension of a last-chance

agreement, removal from a position as shop steward, demotion, assigning additional unwanted

duties, refusal to promote, refusal to transfer or to give a deserved pay raise, severance benefits or

bonus, [or] suspension."  1-34 Larson on Employment Discrimination § 34.04 (citations omitted)

(collecting cases); *see also, e.g., Miller v. Praxair, Inc.,* 408 Fed. App'x 408, 410 (2d Cir. 2010)

(summary order) ("[T]ypical examples of actionable adverse employment actions include

termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, or significantly diminished material

responsibilities.") (internal quotation and editorial marks and citation omitted).  That said,

"[m]aterial adversity is to be determined objectively, based on the reactions of a reasonable

employee.  Context matters, as some actions may take on more or less significance depending on

the context.  Alleged acts of retaliation must be evaluated both separately and in the aggregate, as

even trivial acts may take on greater significance when they are viewed as part of a larger course of

conduct."  *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 568 (2d Cir. 2011) (internal

quotation marks and citations omitted).  Kasperek has not pled any problems at work between

January 1990 and October 2012, a span of over 22 years.  Problems allegedly arose abruptly

starting in October 2012 with the first graffiti incident and Kasperek's first complaint.  These

problems included an increased scrutiny not justified by Kasperek's history of positive performance

evaluations.  *Cf. Richardson v. N.Y. State Office of Mental Health*, No. 6:11-CV-1007 GLS/ATB,

2014 WL 3818928, at *8 (N.D.N.Y. Aug. 4, 2014) (denying summary judgment for a retaliation

claim where certain "inconsistencies cast doubt as to whether the interrogation was part of a

targeted investigation into reported wrongdoing, or whether it was merely a fishing expedition");

*John v. Kingsbrook Jewish Med. Ctr./Rutland Nursing Home*, No. 11-CV-3624 MKB, 2014 WL

1236804, at *18 (E.D.N.Y. Mar. 25, 2014) (recognizing that certain actions including increased

scrutiny "arguably may be considered 'substantial in gross' such that they amount to adverse

employment action"), *aff'd sub nom. John v. Kingsbrook Jewish Med. Ctr.*, 598 F. App'x 798 (2d Cir.

2015).  Kasperek has pled that DOCCS arranged for certain training meetings to be used to

expose that she made complaints and that the complaints involved personal information.  *Cf. Ray*

*v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 360 (D. Mass. 2013) (denying summary judgment for a

retaliation claim where, *inter alia*, the employer "knowingly released severely damaging information

. . . and arguably violated its own policy against disseminating information contained in employee

personnel records").  Kasperek has pled that she received two threatening or harassing telephone

calls under circumstances suggesting that DOCCS knew that coworkers would make the calls and

that it condoned the behavior.  *Cf. Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26

(2d Cir. 2014) (vacating an award of summary judgment on a retaliation claim, where a supervisor

used a racial slur and where "discriminatory harassment from a supervisor may alone suffice to

establish an adverse employment action.").  Additionally, Kasperek has pled that DOCCS moved

her classroom to a more distant and inconvenient building on site.  This allegation is somewhat

analogous to changes in office conditions that can contribute to a retaliation claim even if they

cannot support one alone.  *Cf. Collins v. State of Ill.*, 830 F.2d 692, 704 (7th Cir. 1987) ("Plaintiff

previously had her own office, a telephone at her desk, printed business cards, and listings in

professional publications as a library consultant.").

23

Looking at all the allegations in the amended complaint, Kasperek has a lot of work to do in discovery stitching together a number of sub-threshold events into a broader context that would dissuade a reasonable person from speaking out against improper conduct.  For now, though, Kasperek has done enough to allege circumstances that plausibly could have come together to create that broader context.  The Court thus recommends denying DOCCS's motion with respect to the third claim of the amended complaint.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting DOCCS's motion (Dkt. No. 16) in part to dismiss the second claim in the amended complaint.  The Court recommends denying the motion in all other respects.

## V.    OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. § 636(b)(1); FRCP 72.  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

_____/s Hugh B. Scott_____
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: January 10, 2017

24