UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELE L. KASPEREK,

               Plaintiff,

     v.

NEW YORK STATE, DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

               Defendant.
_____

16-CV-671-LJV-MWP
DECISION & ORDER

On August 18, 2016, the plaintiff, Michele Kasperek, commenced this action

against her then-employer, the New York State Department of Corrections and

Community Supervision ("DOCCS").  Docket Item 1.  Kasperek alleges that she was

subjected to a hostile work environment, sex discrimination, and retaliation in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]  Docket Item 14.

On November 1, 2016, the case was referred to United States Magistrate Judge Hugh

B. Scott for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B), Docket Item 12,

and on March 5, 2021, the case was reassigned to United States Magistrate Judge

Marian W. Payson, Docket Item 60.

On February 5, 2021, DOCCS moved for summary judgment.  Docket Item 56.

Kasperek responded on April 5, 2021, Docket Item 62, and DOCCS replied on April 9,

2021, Docket Item 63.  Kasperek then filed a supplemental statement of undisputed

---

[1] Kasperek previously asserted sex discrimination and retaliation claims under
the New York Human Rights Law, *see* Docket Item 1 at 11-14, but she later amended
her complaint to assert claims only under Title VII, *see* Docket Item 14.

facts on April 28, 2021, Docket Item 65, and DOCCS responded to that supplemental statement on May 3, 2021, Docket Item 66.

On August 31, 2021, Judge Payson issued a Report and Recommendation ("R&R") finding that DOCCS's motion should be granted in part and denied in part. Docket Item 68.  More specifically, Judge Payson recommended allowing Kasperek's hostile work environment claim to proceed but granting DOCCS's motion for summary judgment on her remaining claims.  *Id*.

Both parties objected to the R&R on September 30, 2021.  Docket Items 71, 72. Kasperek objected to Judge Payson's finding that none of the alleged retaliatory acts were sufficient to raise a material issue of fact about whether she suffered a cognizable adverse employment action.  Docket Item 71.  DOCCS argued that Judge Payson erred in concluding that there were issues of fact as to whether Kasperek was subjected to an objectively hostile work environment based on her gender and whether DOCCS's remedial responses were sufficient.  Docket Item 72.  DOCCS responded to Kasperek's objection on October 15, 2021, Docket Item 74, and Kasperek responded to DOCCS's objection on October 22, 2021, Docket Item 75.  Both parties replied on November 5, 2021.  Docket Items 76, 77.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, responses, and replies; and the materials submitted to Judge

Payson.  Based on that review, the Court adopts Judge Payson's recommendation to grant DOCCS's motion in part and deny it in part.[2]

## FACTUAL BACKGROUND

Kasperek was employed by DOCCS as a teacher from 1990 to 2020.[3]  Docket Item 56-2 at ¶¶ 15, 17; Docket Item 65 at ¶¶ 15, 17.  This suit pertains to events that occurred when she taught at the Gowanda Correctional Facility ("Gowanda") between October 31, 2012, and November 2015.  Docket Item 56-2 at ¶¶ 4, 10; Docket Item 65 at ¶¶ 4, 10.  Specifically, Kasperek alleges that depictions of penises were left on or around her classroom door on seven occasions.  *See* Docket Item 56-2 at ¶ 49 (first incident on October 31, 2012); Docket Item 65 at ¶ 48 (same); Docket Item 56-2 at ¶ 67 (second incident on November 1, 2012); Docket Item 65 at ¶ 66 (same); Docket Item 56-2 at ¶ 72 (third incident on February 12, 2013, which included a drawing of an ejaculating penis on Kasperek's classroom door); Docket Item 65 at ¶ 71 (same); Docket Item 56-4 at 35 (testifying that the February 2013 drawing was of a penis ejaculating over her name); Docket Item 56-2 at ¶ 74 (fourth incident on March 18, 2014); Docket Item 65 at ¶ 73 (same); Docket Item 56-2 at ¶ 115 (fifth incident on June

---

[2] Judge Payson recommended granting DOCCS's motion for summary judgment on Kasperek's sex-discrimination claim.  Docket Item 68 at 27-28.  Because Kasperek did not object to that recommendation, *see* Docket Item 71 at 2, this Court need not review it, *see Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  In any event, this Court agrees with Judge Payson that this claim should be dismissed.

[3] The Court assumes familiarity with the facts of the case as set forth in the R&R.  Accordingly, the Court provides only a brief recitation of the facts relevant to the parties' objections.  Because this is a motion for summary judgment, this Court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

2, 2014); Docket Item 65 at ¶ 114 (same); Docket Item 56-2 at ¶ 133 (sixth incident on December 16, 2014, when Kasperek found a drawing of an ejaculating penis near the shared employee elevator); Docket Item 65 at ¶ 132 (same); Docket Item 56-2 at ¶ 162 (seventh incident on March 11, 2015, which involved a foam penis sticker found on Kasperek's classroom door); Docket Item 65 at ¶ 161 (same).

Kasperek reported every incident.  Docket Item 56-2 at ¶¶ 50, 68, 72, 75, 115, 133, 162; Docket Item 65 at ¶¶ 49, 67, 71, 74, 114, 132, 161.  Each drawing on Kasperek's classroom door was later painted over—either by an "inmate paint crew" or maintenance staff.  Docket Item 56-2 at ¶¶ 51, 57, 69, 73, 75, 80, 115; Docket Item 65 at ¶¶ 50, 56, 68, 72, 74, 79, 114.

On March 19, 2014, after the fourth graffiti incident, Kasperek filed discrimination and harassment complaints with DOCCS's Office of Diversity Management and with the Gowanda superintendent.  Docket Item 56-2 at ¶¶ 88, 90; Docket Item 65 at ¶¶ 87, 89. On April 25, 2014, the Gowanda superintendent issued a memorandum to all staff "reminding them of DOCCS's no-tolerance policy with respect to sexual discrimination, harassment, and retaliation."  Docket Item 56-2 at ¶ 102; Docket Item 65 at ¶ 101.  After the fifth incident, Gowanda implemented a new action plan which included, among other items, checking Kasperek's classroom area before Kasperek arrived at work, additional checks of the area, removal of graffiti by maintenance or other staff rather than by the inmate paint crew, and an offer to move Kasperek's classroom.  Docket Item 56-2 at ¶¶ 117, 118; Docket Item 65 at ¶ 117.

Kasperek also received two harassing phone calls at work on January 7, 2015. Docket Item 56-2 at ¶ 147; Docket Item 65 at ¶ 146.  During the first call, an anonymous

caller called her a "cunt" and hung up the phone.  Docket Item 56-2 at ¶ 147; Docket Item 65 at ¶ 146.  During the second call, an anonymous caller stated, "Watch your back, bitch."  Docket Item 56-2 at ¶ 147; Docket Item 65 at ¶ 146.  Kasperek reported both those incidents as well.  Docket Item 56-2 at ¶ 148; Docket Item 65 at ¶ 147.

After Kasperek reported the January 2015 phone calls to her supervisor and to security staff, Gowanda referred the reports to DOCCS's Office of Special Investigations ("OSI").  Docket Item 56-2 at ¶ 149; Docket Item 65 at ¶ 148.  OSI's investigation concluded that the calls were made from within the facility, Docket Item 56-2 at ¶ 153; Docket Item 65 at ¶ 152, but the investigation into who made the calls was discontinued as inconclusive, Docket Item 56-2 at ¶ 155; Docket Item 65 at ¶ 154.   DOCCS asserts that nearly all employees working in the area would have had access to the phone linked to the calls, Docket Item 56-2 at ¶ 153, but Kasperek claims that only three employees had access to that phone, Docket Item 65 at ¶ 152.

After Kasperek found the foam penis sticker on her door on March 11, 2015, her classroom was moved to a more secure location.  Docket Item 56-2 at ¶ 166; Docket Item 65 at ¶ 165.  Once she moved, Kasperek was no longer subjected to drawings or graffiti in her work area and the threatening phone calls stopped.  Docket Item 56-2 at ¶ 169; Docket Item 65 at ¶ 168.  In August 2015, however, "graffiti concerning [Kasperek] (including several drawings of penises and sexually explicit statements) was found in [an] inmate bathroom."  Docket Item 56-2 at ¶ 176; Docket Item 65 at ¶ 175.

## LEGAL PRINCIPLES

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). If the nonmovant fails to carry this burden, the court may grant summary judgment. *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## **DISCUSSION**

### I.   **HOSTILE WORK ENVIRONMENT**

Judge Payson recommended denying DOCCS's motion for summary judgment on Kasperek's hostile work environment claim because she found that Kasperek had raised a genuine dispute about whether her working conditions were objectively hostile and whether DOCCS was responsible for those conditions.  Docket Item 68 at 12-27.  DOCCS argues that Judge Payson erred on both counts.  *See* Docket Item 72 at 5.  This Court agrees with Judge Payson.

"[M]istreatment at work[] . . . is actionable under Title VII only when it occurs because of an employee's sex[] or other protected characteristic."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  "[C]ourts have consistently emphasized that the ultimate issue is the reason[] for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace."  *Id.* (emphasis in original).  "As a result, discrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same" sex.  *Id.*

To succeed on a hostile work environment claim, a plaintiff must establish: "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[;] and [2] that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation and internal quotation marks omitted).  In conducting this analysis, "[c]ourts consider the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with the victim's job performance." *Lax v. City Univ. of N.Y.*, 2022 WL 103315, at *2 (2d. Cir. Jan. 11, 2022) (summary order) (citation and internal quotation marks omitted).  The test has both objective and subjective elements: "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (citation and internal quotation marks omitted).[4]

### A.    Because of Sex

As a threshold issue, this Court must consider whether the alleged harassment was based on a protected characteristic—here, sex.  DOCCS argues that Judge Payson erred by "largely declin[ing] to consider [its] argument that there was no evidence that the conduct [Kasperek] complained of was, in fact, sex discrimination, as opposed to merely some interpersonal conflict."  Docket Item 72 at 13.  This Court disagrees.

In support of its position, DOCCS maintains that "[o]ther graffiti depicting penises was similarly found in work areas shared by male and female employees with no reference to [Kasperek]." *Id.* at 13-14.  But "the inquiry into whether ill treatment was actually sex-based discrimination cannot be short-circuited by the mere fact that both men and women are involved." *Brown*, 257 F.3d at 254.  That is, "it may be the case that a co-worker or supervisor treats both men and women badly, but women worse." *Id.*

---

[4] DOCCS does not dispute that Kasperek has raised a triable issue of fact as to the subjective component.  *See* Docket Item 68 at 13 n.2.

As Judge Payson correctly concluded, the conduct here raises a triable issue as to whether Kasperek was targeted because of her sex rather than simply because of an interpersonal workplace conflict.  While DOCCS refers to penis graffiti existing in common areas, Kasperek was specifically targeted: images of penises were drawn and left on her classroom door, and she received two harassing phone calls on her classroom's extension.  *See, e.g.*, Docket Item 56-4 at 35, 37; Docket Item 65 at ¶ 146; Docket Item 65-1 at 32.  And there can be no question that the images and words used to target Kasperek—penises, "cunt," and "bitch"—are inherently sexual and that the words are demeaning.

Indeed, the third graffiti incident included an image of a penis ejaculating onto Kasperek's name.  Docket Item 56-4 at 35.  It is hard to imagine—and it certainly would be inappropriate for the Court to conclude as a matter of law—that this inherently sexualized drawing was solely the result of an interpersonal conflict and not Kasperek's sex.  *Cf. Ruiz v. City of New York*, 2015 WL 5146629, at *9 (S.D.N.Y. Sept. 2, 2015) (concluding on a motion to dismiss that allegations that a coworker photoshopped the plaintiff's face onto a naked woman's body and subjected her to multiple instances of sexually explicit graffiti using her name was sufficient to state a hostile work environment claim).[5]

---

[5] A factfinder also must consider the totality of the circumstances and may infer that seemingly "sex-neutral" harassment occurred because of a plaintiff's protected characteristic in light of other incidents that were explicitly sex-based.  *See Howley v. Town of Stratford*, 217 F.3d 141, 154-56 (2d Cir. 2000) ("Given the contents of Holdsworth's April 12 barrage, a factfinder would be entitled to infer that any harassment Holdsworth directed at Howley thereafter, with or without obscenities, was gender-based.").  So even if the incidents did not all involve sexually-charged words and images, a jury could conclude, based on the nature of the third incident, that the other depictions were drawn or placed on Kasperek's door because of her sex.

DOCCS also argues that "[c]ausation is further lacking here because there is no evidence tying the January 7, 2015, phone calls to the sporadic appearance of graffiti." Docket Item 72 at 15. But even if the phone calls and graffiti were unrelated—itself a factual issue—a jury could conclude that the phone calls constituted sex-based harassment. Kasperek received two phone calls on her classroom's extension in which an anonymous person—presumably a coworker who called from a facility phone during work hours—called her two gender-based slurs, "bitch" and "cunt." *See* Docket Item 65 at ¶ 146; Docket Item 65-1 at 32. And a court in this district has found that "cunt" and "fucking bitch" are "obviously gender-based derogatory taunts." *Giambra v. Zeller Corp.*, 2014 WL 2519740, at *7 (W.D.N.Y. Mar. 31, 2014).[6]

For all those reasons, this Court agrees with Judge Payson that there is sufficient evidence in the record for a jury to find that the harassment Kasperek experienced was based on her sex. DOCCS's objection to the R&R on this score therefore fails.

### B.    The Severity and Pervasiveness of the Harassment

This Court also agrees with Judge Payson that Kasperek has raised a triable issue of fact as to whether the harassment was sufficiently severe or pervasive to alter the conditions of Kasperek's employment and create an abusive working environment.

---

[6] The case law cited by DOCCS, Docket Item 72 at 14-15, does not suggest otherwise. *See Richmond-Hopes v. City of Cleveland*, 1998 WL 808222, at *5 (6th Cir. Nov. 16, 1998) (noting that occasional references to plaintiff as a "bitch" was evidence of discrimination because of sex but that the conduct alleged was also directed to a male employee); *Burch v. Young Harris Coll.*, 2013 WL 11319423, at *7 (N.D. Ga. Oct. 9, 2013) (differentiating Title IX from Title VII sex discrimination and noting that under Title IX, "the harassment faced by the student must go beyond simple gender-based taunting and must be so severe that it harms the student's educational experience and results in a denial of educational opportunities").

Even where some aspects of a plaintiff's claim are "no more than innocuous badinage of the type to be expected between coworkers of different sexes, a hostile environment claim must be evaluated on the basis of the cumulative effect of the abusive conduct." *Dawson v. County of Westchester*, 373 F.3d 265, 273-74 (2d Cir. 2004) (citation and internal quotation marks omitted). Kasperek says that as a result of the harassment, she lost her students' respect, Docket Item 56-4 at 28, 30-34; she was treated as an object of sexual attention, Docket Item 65 at ¶ 175; and coworkers joked about the images, Docket Item 56-4 at 40; Docket Item 65-1 at 7. The Court agrees with Judge Payson's conclusion that despite cases finding infrequent graffiti to be insufficient to create a hostile work environment, the harassment here crossed the line because it "had tangible adverse effects on [Kasperek's] working conditions and relationships within the Gowanda prison."[7]  Docket Item 68 at 18; *see also* Docket Item 56-17 at 15-17, 115-16; Docket Item 63-2 at 24; Docket Item 65-1 at 38-39.

DOCCS argues that "[t]his finding ignores [Kasperek's] own admissions about the lack of any substantial effect the graffiti had on her day to day work and/or the ability to do her job." Docket Item 72 at 7. But a plaintiff need not be unable to perform her job to raise a viable a hostile work environment claim. While one factor courts consider

---

[7] In its motion papers, DOCCS emphasized that Kasperek merely alleges "view[ing] seven offensive drawings and receiv[ing] two harassing phone calls intermittently over several years, often with many months between incidents." Docket Item 63 at 3, 6. However, as the Second Circuit has noted, "a rigid 'calculate and compare' methodology ignores the proper role of courts which, at the summary judgment stage, is to construe all facts and draw all inferences in the light most favorable to the nonmovant. Also, such an approach, if strictly followed, disregards Supreme Court guidance that hostile environment analysis is not, and by its nature cannot be, a mathematically precise test." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 746 (2d Cir. 2003) (citations and internal quotation marks omitted).

is interference with work performance, "no single factor is required." *Dawson*, 373 F.3d at 272 (citation and internal quotation marks omitted). And "[t]he fact that a plaintiff continued to work under difficult conditions is to her credit, not the harasser's. . . . The critical inquiry 'is not whether work has been impaired, but whether working conditions have been discriminatorily altered.'" *EEOC v. Fairbrook Med. Clinic*, 609 F.3d 320, 330 (4th Cir. 2010) (quoting *EEOC v. R&R Ventures*, 244 F.3d 334, 340 (4th Cir. 2001)).

Judge Payson also correctly considered the particular nature of Kasperek's workplace and position as critical factors in determining whether Kasperek's working conditions were sufficiently altered to support her hostile work environment claim. *See* Docket Item 68 at 18-23. As Judge Payson noted, Kasperek was a female teacher "at an all-male correctional facility" who "was wholly reliant on the largely male security staff for her personal safety." *Id.* at 21. And Judge Payson correctly concluded that in that context, a jury might well conclude that the drawings, combined with the jokes Kasperek's coworkers made about them, *see* Docket Item 65-1 at 7; Docket Item 56-4 at 40, "undermined [Kasperek's] 'sense of personal safety' and 'her capacity to command respect'" in an environment where trust among coworkers and respect is of utmost importance. Docket Item 68 at 19 (citing *Dawson*, 373 F.3d at 273-74).

The fact that someone sexually objectified Kasperek by posting graffiti that included two highly-sexualized comments about her in an inmate bathroom lends even more support to that conclusion. Docket Item 56-17 at 127; Docket Item 65 at ¶ 175. While DOCCS insists that Kasperek's safety-related complaints are meritless, Docket Item 72 at 10, assessing whether the conduct at issue here sufficiently altered Kasperek's work environment is a task for a jury, not DOCCS or even this Court. *See*

*Hayut*, 352 F.3d at 747 ("Whether a factfinder will, on balance, decide that the remarks reached the objective level of pervasiveness required by law is not for us to say.  It is quite sufficient that there be enough evidence in the record from which a reasonable jury could so conclude.").  And a reasonable juror might well find that the cumulative effect of the postings significantly compromised Kasperek's work environment, including her safety.

DOCCS also argues that the phone calls Kasperek received, which might or might not be interpreted as physical threats, are not sufficiently severe to preclude summary judgment.  Docket Item 72 at 9.  In contrast to the cases cited by Judge Payson, DOCCS says, "[n]o such shocking, extreme, and pervasive conduct by an identified supervisor is alleged or present in this case."  *Id.*  But "[t]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Torres v. Pisano,* 116 F.3d 625, 631 (2d Cir. 1997).  Although the messages in this case may not have been as extreme as those in the cases cited in the R&R, "[b]ecause of the fact-specific and circumstance-driven nature of hostile environment claims, courts must be mindful that the appalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable."  *Hayut*, 352 F.3d at 746 (citation and internal quotation marks omitted).

Ultimately, a reasonable jury well might conclude that the graffiti and phone calls were related to each other and that even if they were not, the cumulative effect of the calls and the images created a hostile work environment.  *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (criticizing the district court for dividing the

reported incidents into four categories because "the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case"). And regardless, a reasonable jury well might conclude that those calls—or the graffiti—independently created a hostile work environment.

Therefore, this Court agrees with Judge Payson that there are factual issues about whether the conduct to which Kasperek was subjected was objectively severe or pervasive enough to constitute a hostile work environment.

### C.      Imputing the Harassment to DOCCS

Finally, DOCCS objects to Judge Payson's conclusion that the conduct here could be imputed to it. Docket Item 72 at 16-27. Specifically, DOCCS asserts that its responses to the graffiti and phone calls were prompt and reasonable, that every drawing was removed the same day, and that it executed a progressive and appropriate response strategy. *Id.* at 19, 26-27. For that reason, DOCCS argues that Judge Payson erred in finding that it could be liable for the continued harassment. Again, this Court agrees with Judge Payson.

DOCCS specifically contends that its response to the graffiti was sufficient and cites a case from the Eastern District of New York in arguing that "when graffiti is reported to the employer and the employer promptly removes the offending language, the employer has taken appropriate remedial action." *Id.* at 20 (quoting *Williams v. County of Nassau*, 2019 WL 2270518, at *7 (E.D.N.Y. May 28, 2019), *aff'd,* 806 F. App'x 75 (2d Cir. 2020)). But the facts in *Williams*—which involved etchings of the letters "KKK" and a half-finished swastika, *see id.* at *2—are easily distinguishable from

14

the facts here.  In *Williams*, the employer had taken additional steps, such as issuing an order warning of immediate discipline for anyone found to have created discriminatory markings.  *Id.* at *7.[8]  Here, by contrast, it was only after the fourth instance of graffiti that DOCCS began to take any sort of preventative measure by issuing a memorandum, Docket Item 56-2 at ¶ 102; it was only after the fifth incident that DOCCS implemented an action plan, *id.* at ¶¶ 117, 118.  Under those circumstances, a jury is in the best position to decide whether there was a "practical []possibility of preventing any workplace graffiti," Docket Item 72 at 20, that targeted Kasperek.  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000) ("[I]f harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate.").

Likewise, there is a question of fact about whether DOCCS's responses to the phone calls were sufficient.  Even crediting DOCCS's assertions that the phone calls could have been placed by many employees and that it had Kasperek's extension forwarded to another employee to "ensure she did not receive any more harassing calls," Docket Item 72 at 25-26, this Court cannot conclude that DOCCS's response to that potential physical threat was adequate as a matter of law.  As Judge Payson concluded, the promptness of DOCCS's response may well have been inadequate: "more than two months after the phone calls were made, [the investigator] wrote an

---

[8] *Davis v. New York Department of Corrections*, 256 F. Supp. 3d 343 (S.D.N.Y. 2017), a case relied on by the *Williams* court, is similarly inapposite.  There, the court noted that "DOCCS would paint over racist graffiti as it appeared, and when it became clear that this was insufficient to solve the problem, it painted the walls black."  *Id.* at 353.  The court concluded that the employer's response therefore was not repeatedly ineffective.  *Id.*

email indicating that he had three possible suspects, whom he intended to interview 'by the end of [the following] week.' . . . [But] his next update did not take place until May 20, 2015, more than four months after the incident, at which point he indicated that his pool of potential suspects had enlarged 'substantially.'"  Docket Item 68 at 26 (citations omitted).  Whether DOCCS's responses were "in proportion to the level of seriousness," *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013), or "sufficiently calculated to end the harassment," *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 250 (2d Cir. 1995), is a question best left to the jury, *see Whidbee*, 223 F.3d at 72-73.

By its very nature, the question of whether a response to harassment was "sufficient" is nearly impossible to gauge as a matter of law.  Only when the answer to that question is easy or obvious should a court grant summary judgment on that issue. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) ("Whether the company's response was reasonable has to be assessed from the totality of circumstances.  Factors to be considered in this analysis are the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment."); *Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 267 (E.D.N.Y. 2019) ("In the context of summary judgment, '[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate.'" (quoting *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998)).  And the answer here is anything but that.

In sum, this Court agrees with Judge Payson that there are issues of fact as to whether the incidents alleged created a sex-based hostile work environment and

whether DOCCS's responses to the incidents were sufficient. Therefore, the Court accepts and adopts Judge Payson's recommendation to deny DOCCS's motion for summary judgment on this claim.

## II.    RETALIATION

Judge Payson recommended granting DOCCS's motion for summary judgment as to Kasperek's retaliation claim. Docket Item 68 at 28-36. Kasperek argues that Judge Payson erred in finding that none of the alleged retaliatory acts were sufficient to raise a material issue of fact that she had suffered a cognizable adverse action. Docket Item 71 at 2. Specifically, Kasperek argues that the two phone calls she received and DOCCS's alleged failure to investigate those calls could be considered retaliation because they could "be interpreted by a jury as dissuasive to a reasonable worker from making or supporting a discrimination complaint." *Id.* at 3, 5.

But Judge Payson already addressed that very argument and found it deficient. As to the phone calls, Judge Payson concluded that Kasperek "conflate[d] the actions of DOCCS with those of her coworkers" and "failed to articulate why these alleged actions of her coworkers . . . should be considered retaliation by DOCCS." Docket Item 68 at 34.[9] Kasperek does not address those conclusions in her objection.

Kasperek also insists that DOCCS's failure to investigate the phone calls "could be understood by a jury" to be retaliation. Docket Item 71 at 5. But Judge Payson

---

[9] While Judge Payson explained that it is possible that "'unchecked retaliatory co-worker harassment may constitute adverse employment action' if 'the employer knows about (or reasonably should know about) that harassment but fails to take appropriately remedial action,'" Docket Item 68 at 34 (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)), Kasperek failed to make that argument either in her original opposition papers or in her objection.

already considered that argument as well and found that a failure to investigate cannot

be considered a retaliatory adverse employment action.  *See* Docket Item 68 at 33

(citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)).

Similarly, Kasperek makes passing reference to feeling ostracized "every single day" by

Gowanda's security staff.  Docket Item 71 at 3 (quoting Docket Item 56-4 at 85)).  But

feeling ostracized does not constitute an adverse action sufficient to support a

retaliation claim.  *See Danieu v. Teamsters Local 264*, 2011 WL 1259839, at *9

(W.D.N.Y. Mar. 31, 2011).  Nor do Kasperek's generalized allegations address Judge

Payson's observation that Kasperek "conflates the actions of DOCCS with those of her

coworkers."[10]  Docket Item 68 at 34.

In sum, Kasperek's objection does not identify any error in Judge Payson's

analysis, nor does it address the gaps Judge Payson found in her retaliation claim.

Indeed, Kasperek's objection—which simply reiterates arguments made to and rejected

by Judge Payson—is nothing more than an attempt to get a second bite at the apple.

*See Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382

(W.D.N.Y. 1992) (noting that "rehashing" of prior arguments made before the magistrate

judge is improper and contravenes the goal of assigning cases to magistrate judges—

that is, to increase the overall efficiency of the federal judiciary); *Molefe v. KLM Royal

Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) ("When a party makes only

conclusory or general objections, or simply reiterates the original arguments, the Court

---

[10] Kasperek argues that her retaliation claim is viable because of the mental and physical effects she experienced.  Docket Item 71 at 4-5.  But that conflates her injury with the basis for her claim.  This Court does not minimize the trauma that Kasperek experienced as a result of those phone calls.  But that injury alone does not support a retaliation claim.

will review the [R&R] strictly for clear error.").  In any event, this Court agrees with Judge Payson's recommendation to dismiss Kasperek's retaliation claim.  Because Kasperek has not identified any DOCCS act that a jury might find to constitute retaliation, her retaliation claim fails as a matter of law.

## CONCLUSION

For the reasons stated above and in the R&R, this Court accepts and adopts Judge Payson's recommendations.  DOCCS's motion for summary judgment, Docket Item 56, is GRANTED in part and DENIED in part: Kasperek's retaliation and discrimination claims are dismissed, but her claim based on a hostile work environment may proceed.  **The parties shall contact the Court within 30 days of the date of this order to schedule a status conference so that the Court can set a trial date.**

SO ORDERED.

Dated:      March 8, 2022
            Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE